# UNITED STATES DISTRICT COURT

for the

Eastern District of Pennsylvania

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>AOL accounts associated with: vlinkdata@aol.com | )<br>)<br>)<br>)<br>)<br>)    Case No. 17-745-M |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

AOL accounts for vlinkdata@aol.com located on servers at AOL, Inc., 22000 AOL Way, Dulles, Va. See Attachment A.

located in the      Eastern      District of      Virginia     , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§1343, 371, 1001,<br>1519, 52 U.S.C. §§ 30104,<br>30109, and 30116 | wire fraud, conspiracy, false statements, producing false records, causing false<br>campaign contribution reports, limits on campaign contributions and expenditures |

The application is based on these facts:

See Attached Affidavit of Probable Cause

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Jonathan R. Szeliga, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 5/31/2017

_____
*Judge's signature*

City and state: Philadelphia, Pennsylvania

Richard A. Lloret, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT

I, Jonathan R. Szeliga, your affiant, having been duly sworn, depose and state as follows:

I have been employed as a Special Agent (SA) with the FBI for over 1 year and am currently assigned to the Philadelphia Division. I am currently assigned to a white collar / public corruption criminal squad. I have investigated several white collar and public corruption cases. I have worked on and assisted with Title III applications and intercepts; I have assisted in the writing and reviewing of search warrants; I have analyzed financial records; and I have directed cooperating witnesses to conduct consensual recordings. Prior to the FBI, I had over five years of experience at a public accounting firm as an auditor, working in the firm's financial institution industry group.

1.      I personally participated in the investigation of the offenses described herein. As a result of my participation in this investigation, and through interviews with and analysis of reports and other information provided by other law enforcement personnel, I am familiar with this investigation. On the basis of all of the information I have learned since the beginning of this investigation, I allege herein facts to show that probable cause exists to believe that in the specified Email accounts associated with vlinkdata@aol.com (hereinafter referred to as the TARGET EMAIL #1); cavasensellc@gmail.com (hereinafter referred to as the TARGET EMAIL #2); dajones25@yahoo.com (hereinafter referred to as the TARGET EMAIL #3); jimmiemoore51@hotmail.com (hereinafter referred to as the TARGET EMAIL #4); and ksblackblue@gmail.com (hereinafter referred to as the TARGET EMAIL #5)  there is evidence of violations of: 18 U.S.C. § 1343 (wire fraud), 18 U.S.C. § 371 (conspiracy), 18 U.S.C. § 1001 (false statements), 18 U.S.C. § 1519 (producing false records), 52 U.S.C. § 30104 (causing false campaign contribution reports), and 52 U.S.C. §§ 30109 and 30116

(limits on campaign contributions and expenditures) (collectively, the "SUBJECT

OFFENSES"). This affidavit is submitted in support of an application for a search warrant

authorizing the search and seizure of the specified email addresses, TARGET EMAIL #1,

TARGET EMAIL #2, TARGET EMAIL #3, TARGET EMAIL #4, and TARGET EMAIL #5

(as described in Attachment A).

        2.       In particular, there is probable cause to believe that the information sought

in these email accounts, concerning the specifics of the above offenses, includes (i) the nature,

extent, and methods of the herein-described criminal activities; (ii) the identities and roles of

accomplices, aiders and abettors, co-conspirators and participants in the illegal activities; (iii) the

distribution and transfer of the money involved in these activities; (iv) records detailing and

outlining criminal activity; and (v) the location and source or resources used to finance the illegal

activities.

        3.       The statements contained in this affidavit are based in part on hearsay,

including information by other Special Agents of the FBI. The information set forth herein is

also based on my training and experience as a Special Agent. All statements are provided in sum

and substance and in part. Since this affidavit is being submitted for the limited purpose of

establishing probable cause to search certain email accounts and seize certain evidence, I have

not included each and every fact known to me concerning this investigation.

        4.       Based upon my training and experience, I have learned that AOL, Inc.

provides Internet based e-mail access to the general public, and that information, records, and

stored electronic communications, including opened and unopened email relating to AOL

customers' accounts, may be located on AOL's computer servers. I am aware that computers

located at AOL contain records, information and stored electronic communications belonging to

2

third parties. AOL also provides free online storage space to its users. Users can store electronic communications as well as other types of computer files in this space. E-mail messages can be saved on an account either by the AOL default settings or by the user's choice. In addition, AOL may retain information and records regarding its customers and their use of their email accounts or other provided services.

5.     Based upon my training and experience, I have learned that Google, Inc. provides Internet based e-mail access to the general public, and that information, records, and stored electronic communications, including opened and unopened email relating to Google customers' accounts, may be located on Google's computer servers. I am aware that computers located at Google contain records, information and stored electronic communications belonging to third parties. Google also provides free online storage space to its users. Users can store electronic communications as well as other types of computer files in this space, sometimes called Google Drive. E-mail messages can be saved on an account either by the Google default settings or by the user's choice. In addition, Google may retain information and records regarding its customers and their use of their email accounts or other provided services.

6.     Based upon my training and experience, I have learned that Yahoo! Mail provides Internet based e-mail access to the general public, and that information, records, and stored electronic communications, including opened and unopened email relating to Yahoo! Mail customers' accounts, may be located on Yahoo! Mail's computer servers. I am aware that computers located at Yahoo! Mail contain records, information and stored electronic communications belonging to third parties. Yahoo! Mail also provides free online storage space to its users. Users can store electronic communications as well as other types of computer files in this space. E-mail messages can be saved on an account either by the Yahoo! Mail default

3

settings or by the user's choice.  In addition, Yahoo! Mail may retain information and records regarding its customers and their use of their email accounts or other provided services.

7.      Based upon my training and experience, I have learned that Microsoft Corporation Online Services provides Internet based e-mail access to the general public, and that information, records, and stored electronic communications, including opened and unopened email relating to Microsoft Corporation Online Services customers' accounts, may be located on Microsoft Corporation Online Services' computer servers.  I am aware that computers located at Microsoft Corporation Online Services contain records, information and stored electronic communications belonging to third parties.  Microsoft Corporation Online Services also provides free online storage space to its users.  Users can store electronic communications as well as other types of computer files in this space. E-mail messages can be saved on an account either by the Microsoft Corporation Online Services default settings or by the user's choice.  In addition, Microsoft Corporation Online Services may retain information and records regarding its customers and their use of their email accounts or other provided services.

### Overview of the Investigation

8.      As explained in detail below, I have probable cause to believe that KENNETH SMUKLER, ROBERT BRADY, DONALD "D.A." JONES, JIMMIE MOORE, and CAROLYN CAVANESS and others known and unknown have committed violations of 18 U.S.C. § 1343 (wire fraud), 18 U.S.C. § 371 (conspiracy), 18 U.S.C. § 1001 (false statements), 18 U.S.C. § 1519 (producing false records), 52 U.S.C. § 30104 (causing false campaign contribution reports), and 52 U.S.C. § 30116 (limits on campaign contributions and expenditures).  The investigation has uncovered evidence which indicates that BRADY utilized SMUKLER's and D.A. JONES' corporations to conceal payments from BRADY's campaign

4

to repay MOORE campaign debts in exchange for MOORE's agreement to withdraw from the

2012 Democratic primary race against BRADY for U.S. Representative in Pennsylvania's 1st

District. The evidence shows that these concealed payments were made for the purpose of

removing BRADY's primary opponent from the race and willfully undermining various

provisions of the Federal Election Campaign Act (FECA) in the process.

> 9.     As discussed in detail below, these goals were accomplished by routing

three payments totaling $90,000 from BRADY's campaign through political consulting

companies to CAVANESS, the campaign manager for MOORE's campaign, who used a

portion of the funds to pay debts owed by the MOORE campaign, keeping the remainder of the

money for herself and MOORE. The payments were routed in this manner so that the FEC

reports filed by the BRADY and MOORE campaigns would not show that BRADY had made

a payment to his primary opponent in violation of FECA contribution limits.

### Background of the investigation

> 10.     In June of 2011, JIMMIE MOORE announced that he was challenging

BRADY, the incumbent U.S. Representative in Pennsylvania's 1st District, in the 2012

Democratic primary. MOORE had recently retired after serving 12 years as a Municipal

Court Judge in Philadelphia. CAROLYN C. CAVANESS was MOORE's Campaign

Manager.

> 11.     In February of 2012, MOORE dropped out of the Democratic primary,

leaving BRADY unchallenged. On November 2, 2012, BRADY defeated Republican JOHN

FEATHERMAN in the general election.

> 12.     During the 2012 Democratic primary, BRADY's campaign committee

was BOB BRADY FOR CONGRESS; MOORE's campaign committee was JIMMIE MOORE

5

FOR CONGRESS. Campaign committees raise and spend money for the candidate the campaign committee represents. Money is raised from contributions, and spent on expenditures for the campaign. The Federal Election Commission requires campaign committees to file quarterly campaign finance reports to disclose quarterly activity related to contributions, expenditures, debts and loans of the committee.

13. The Federal Election Campaign Act (the Act) places monetary limits on contributions to support candidates for federal office and prohibits contributions from certain sources. Title 11 of the Code of Federal Regulations (11 CFR) establishes limits on how much money an individual can contribute to a federal office candidate. Pertinent to this investigation, during the time period in question, 2011 through 2012: (A) 11 CFR 110.1 limited individual campaign contributions to $2,500 per candidate for both the primary and general elections, such that an individual was permitted to contribute a combined total of $5,000 in an election cycle to a candidate; (B) 11 CFR 102.12(c)(2) limited contributions from one federal candidate's authorized committee to another federal candidate's authorized committee to $2,000 per candidate for both the primary and general elections, for a combined total of $4,000 in an election cycle; and (C) 11 CFR 114.2 and 114.5 prohibited banks, unions, and corporations from making any contributions to individual campaigns.

14. Additionally, during 2011 and 2012, 11 CFR 102.7 required a candidate's campaign committee to have a treasurer before it conducted financial transactions. Pursuant to 11 CFR 103.3(a), the treasurer was responsible for depositing the committee's receipts into the designated campaign depository (i.e., the bank or credit union) within 10 days of receipt, and pursuant to 11 CFR 104.14(d) the treasurer was obligated to authorize all committee expenditures or designate agents for that purpose.

6

15.     KENNETH SMUKLER is a political analyst and consultant.  Through interviews conducted, SMUKLER has been identified as a close associate of BRADY. SMUKLER owns and operates several companies including BLACK AND BLUE MEDIA (BBM), VOTERLINK DATA SYSTEMS (VDS), INFOVOTER TECHNOLOGIES (IVT), LIBERTY CITY PRESS (LCP) and SCISMUK Inc. Of those, BBM, VDS, and IVT all purport to provide political services including consulting, analysis, and public relations.  According to records maintained by the Pennsylvania Department of State, SCISMUK INC. was created December 29, 1992.  BBM and VDS are "fictitious names" belonging to SCISMUK INC. and were created on March 26, 2012.  The Pennsylvania Department of State defines a "fictitious name" as any assumed name, style or designation other than the proper name of the entity using such name.  The "fictitious name" includes a name assumed by a general partnership. An entity is defined as "any individual or any corporation, association, partnership, joint-stock company, business trust, syndicate, joint venture or other combination or group of persons.

16.     DONALD A. JONES (DA JONES) is a political consultant with over 30 years of international, national, state and local political experience.  He is the President and founder of D.A. JONES & ASSOCIATES/D. JONES & ASSOCIATES, a political consulting firm in 1985.  Through interviews conducted, JONES has been identified as a close associate of BRADY.

17.     During the course of the investigation, campaign finance reports were reviewed and analyzed for BRADY and MOORE's campaign committees.

18.     A review of the June 2012 campaign finance report for BRADY's campaign committee, BOB BRADY FOR CONGRESS, showed a $40,000 disbursement to VDS on June 11, 2012 for "Survey and Polling Services."  A review of the September 2012

7

campaign finance report for BOB BRADY FOR CONGRESS showed a $25,000 disbursement

to VDS on July 11, 2012 for "Acquisition of Cross Tabs". A review of the October 2012

campaign finance report for BOB BRADY FOR CONGRESS showed a $25,000 disbursement

to JONES & ASSOCIATES on August 23, 2012 for "Political Consulting."

19.    A review of VDS's PNC Bank account revealed two payments to

CAVANESS in 2012. Both payments to CAVANESS were preceded by payments in the same

amount to VDS from BRADY's committee, BOB BRADY FOR CONGRESS. The timing of

these transactions suggests that VDS was used to pass an illegal campaign contribution from

BRADY to MOORE to pay down MOORE's campaign debt.

20.    The first series of transactions began with a $40,000 check dated June

11, 2012 from BOB BRADY FOR CONGRESS's PNC Bank account which was made

payable to VDS, and which was deposited into VDS's bank account on June 11, 2012. On

June 18, 2012, a check in the amount of $40,000 made payable to CAROLYN CAVANESS

was drawn from VDS's account. The check was dated June 13, 2012, two days after the

$40,000 deposit from BOB BRADY FOR CONGRESS.

21.    The second series of transactions began with a $25,000 check dated

July 10, 2012 from BOB BRADY FOR CONGRESS's PNC Bank account made payable to

VDS, which was deposited into VDS's bank account on July 11, 2012. On July 26, 2012, a

check dated July 17, 2012 in the amount of $25,000 made payable to CAROLYN CAVANESS

was drawn from VDS's account.

22.    Two invoices sent from CAVANESS to SMUKLER falsely stated that

the purpose of these payments was to purchase a poll that MOORE had commissioned in

February 2011 analyzing a potential primary matchup between MOORE and BRADY. In fact,

8

as discussed below, BRADY had been in possession of that poll since December 2011.
Moreover, there is no evidence to suggest that MOORE ever transferred ownership of this poll
to CAVANESS or to CAVASENSE, further illustrating the false nature of the invoices.

23.     A review of D. JONES & ASSOCIATES' Bank of America Bank account
revealed one payment to CAVASENSE & ASSOCIATES INC., a company created by
CAVANESS in the spring of 2012 at MOORE's direction for the sole purpose of using money
from the BRADY campaign to repay MOORE campaign debts.  The payment to CAVANESS
was preceded by a payment in the same amount to D. JONES & ASSOCIATES from BRADY's
committee, BOB BRADY FOR CONGRESS.  The timing of this transaction suggests that D.
JONES & ASSOCIATES was used to pass an illegal campaign contribution from BRADY to
MOORE to pay down MOORE's campaign debt.

24.     This transaction began with a $25,000 check dated August 23, 2012 from
BOB BRADY FOR CONGRESS's PNC Bank account made payable to D. JONES &
ASSOCIATES, which was deposited into D. JONES & ASSOCIATES' bank account on
August 28, 2012.  On September 4, 2012, a check dated August 30, 2012 in the amount of
$25,000 made payable to CAVASENSE & ASSOCIATES was drawn from D. JONES &
ASSOCIATES' account.

25.     Bank records show that a portion of the funds transmitted to CAVANESS
from VDS and to CAVASENSE from D. JONES & ASSOCIATES was used to pay debts
owed by JIMMIE MOORE FOR CONGRESS.  Thus, on August 1, 2012, six days after
CAVANESS received the second payment from VDS, CAVANESS transferred $13,000 from
her personal bank account to an account she had recently opened for CAVASENSE.  In August
and September of 2012, CAVANESS used approximately $21,000 of the money in the

9

CAVASENSE account to repay vendors who were owed money by JIMMIE MOORE FOR CONGRESS.

26. Bank records also show that CAVANESS and MOORE used a portion of the funds transmitted to CAVANESS from VDS to repay loans that MOORE had made to his own campaign, which totaled over $80,000. Thus, shortly after CAVANESS received the first payment from VDS, CAVANESS wrote checks totaling $19,500 from her personal account to MOORE. The memo line on each of these checks reads, "Reimbursements." The remainder of the funds received from VDS and D. JONES & ASSOCIATES was spent by MOORE and CAVANESS on personal expenses. It should be noted that, according to campaign finance reports filed by JIMMIE MOORE FOR CONGRESS, at the time that MOORE withdrew from the primary, JIMMIE MOORE FOR CONGRESS owed CAVANESS approximately $30,000 for work on the campaign.

27. On June 19, 2013, the last campaign finance report was filed by MOORE's campaign committee, JIMMIE MOORE FOR CONGRESS. This report, an amended report for the 4th quarter of 2012, stated that JIMMIE MOORE FOR CONGRESS had no cash on hand and had debts and other obligations totaling approximately $167,158. Of that debt, approximately $85,700 was reported to be loans from MOORE to JIMMIE MOORE FOR CONGRESS. JIMMIE MOORE FOR CONGRESS also reported a $15,000 obligation to MOORE for "campaign expenses" and $34,835 owed to CAVANESS for "consulting." This campaign finance report did not report receiving contributions from BRADY FOR CONGRESS, VDS, or D. JONES & ASSOCIATES. Nor did the report mention the payment of the debts to campaign vendors from CAVASENSE using the funds provided by BRADY

10

FOR CONGRESS through VDS and D. JONES & ASSOCIATES. Rather, the report falsely listed the debts that had been repaid as outstanding obligations of the campaign.

      28.    During an interview of CAVANESS with FBI Agents on April 7, 2017, CAVANESS admitted that WILSON GOODE SR. was involved in negotiations between MOORE and BRADY which resulted in MOORE dropping out of the primary campaign in February 2012, leaving BRADY unopposed in the race for the Democratic nomination. (Consequently, BRADY went onto to win reelection in the general election campaign against his Republican opponent in a district where BRADY's party enjoyed an approximate advantage of 7 to 1 registered Democratic voters to Republican voters.) MOORE, GOODE SR., and BRADY met and came to an agreement which resulted in MOORE ending his campaign. CAVANESS reported that, although she did not attend this meeting, MOORE told her about the meeting shortly after it occurred. CAVANESS reported that MOORE told her that, at the meeting, BRADY agreed to pay MOORE some money that MOORE could use to repay campaign debts in exchange for MOORE's agreement to withdraw from the race. According to MOORE, BRADY and SMUKLER explained the money provided to MOORE could be justified as payment for the sale of a poll MOORE's campaign conducted. MOORE agreed to provide the poll to BRADY.

      29.    On April 14, 2017 and May 2, 2017, agents interviewed MOORE. According to MOORE, he instructed CAVANESS to create and register a shell-corporation, CAVASENSE & ASSOCIATES LLC, to receive the funds from BRADY. SMUKLER's and JONES' companies were used to pass the money from BOB BRADY FOR CONGRESS to CAVASENSE & ASSOCIATES LLC. MOORE also corroborated the account of the meeting with BRADY and GOODE provided by CAVANESS. Further, MOORE stated that BRADY

11

had no actual use for the poll that was the purported explanation for the money that BRADY

FOR CONGRESS paid MOORE via VDS and D. JONES & ASSOCIATES. MOORE also

admitted that the reason the money was paid through VDS, D. JONES & ASSOCIATES, and

CAVASENSE was to conceal the fact that BRADY FOR CONGRESS was giving money to

MOORE.

      30.     At MOORE's direction and in order to further the scheme, CAVANESS

incorporated CAVASENSE & ASSOCIATES LLC on May 29, 2012. CAVASENSE created an

email address associated with the company, cavasensellc@gmail.com (TARGET EMAIL #2).

      31.     Through a consensual search of CAVANESS' various email accounts on

April 7, 2017, agents obtained various emails from TARGET EMAIL #2 to TARGET EMAIL

#1, TARGET EMAIL #3, and TARGET EMAIL #4.

      32.     On May 30, 2012, emails from TARGET EMAIL #2 to TARGET EMAIL

#1 referenced an original and modified agreement between CAVASENSE AND ASSOCIATES

LLC and VDS. According to MOORE, he and SMUKLER worked together to develop the

language in this agreement to use as a cover story for the transfer of the $65,000 from BRADY

FOR CONGRESS through VDS to CAVANESS. The agreements were attached to the emails.

The agreement was a follows:

      33.

---

CavaSense and Associates, LLC is the sole owner of a poll memo and cross tabs for a poll
conducted by Lake Research Partners, for Jimmie Moore for Congress dated February14-21,
2011. CavaSense and Associates, LLC will deliver said poll memo and cross tabs to Voter
Link Data Systems for a total of $65,000.

The said $65,000 will be paid as follows:
    A.  CavaSense and Associates, LLC on June 12, 2012, will deliver poll memo to Voter
       Link Data Systems. Voter Link Data Systems will release payment in the amount of
       $40,000 by/on June 15, 2012.

---

> B. CavaSense and Associates, LLC on June 26, 2012, will deliver cross tabs to Voter Link Data Systems. Voter Link Data Systems will release payment in the amount of $25,000 by/on July 2, 2012.
>
> Upon receipt of the full proposed fee agreement, CavaSense and Associates, LLC, will cease distribution of said poll memo and cross tabs.

34.     On June 4, 2012, an email from TARGET EMAIL #2 to TARGET EMAIL #1 referenced two invoices from CAVASENSE AND ASSOCIATES LLC to VDS regarding the purchase of the polling analysis from Lake Research Partners conducted for JIMMIE MOORE FOR CONGRESS. The invoices were attached to the email. According to MOORE and CAVANESS, these invoices were generated at SMUKLER's direction to conceal the true reason for the payments from VDS.

35.     On June 18, 2012, an email from TARGET EMAIL #2 to TARGET EMAIL #1 referenced the polling analysis provided from CAVASENSE AND ASSOCIATES LLC to VDS. The polling analysis/opposition research was attached to the email.

36.     On June 20 2012, TARGET EMAIL #2 emailed TARGET EMAIL #3 a tax form along with two invoices for "Consulting Services." The invoices were for two payments that totaled $25,000: $15,000 due upon receipt and $10,000 due by August 30, 2012.

37.     During an interview of CAVANESS with FBI Agents on April 7, 2017, CAVANESS admitted that she did not perform any consulting services for D. JONES & ASSOCIATES, that this payment was actually a payment from BRADY to MOORE, and that the two invoices were created to cover up the transfer of the money from BRADY FOR CONGRESS through D. JONES & ASSOCIATES to CAVASENSE.

38.     Through a consensual search of SMUKLER's computer and email accounts on March 21, 2017, Agents obtained an email dated December 11, 2011 from

13

bobcongress@aol.com to ksblackblue@gmail.com (TARGET EMAIL #5), another email account owned by SMUKLER.

39.     The email from bobcongress@aol.com was a forwarded email between bobcongress@aol.com and GREGG KRAVITZ's email address, greggkravitz@gmail.com. This email contained MOORE's polling analysis from Lake Research partners. This was the same polling analysis/opposition research that was allegedly purchased in June 2012 as part of the scheme to cover-up the illegal campaign donation from BOB BRADY FOR CONGRESS. BRADY obtained the opposition research in December 2011, prior to his meeting in February 2012 with MOORE to drop out of the race. TARGET #5 forwarded the email to JONES at TARGET EMAIL #3 on December 11, 2011. The emails showing that BRADY received MOORE's poll in December 2011 constitute evidence that the invoices purporting to show that VDS purchased the poll from CAVASENSE in June 2012 for $65,000 were intended to cover up the true source and purpose of the payments.

40.     In a voluntary, non-custodial interview conducted on April 18, 2017, BRADY denied paying MOORE to withdraw from the 2012 primary. BRADY initially stated that, after MOORE withdrew from the primary, BRADY agreed to give MOORE some money to help pay campaign debts. When confronted with the fact that the payments to MOORE were routed through SMUKLER's company VDS, BRADY stated that purpose of the payments from VDS to CAVANESS was to purchase a poll. BRADY stated that he did not have the poll before VDS purchased it, a statement that is contradicted by the emails discussed above. BRADY also denied ever using D. JONES & ASSOCIATES as a pass-through to send money to another organization, a statement that is contradicted by the evidence discussed above.

14

**Probable Cause**

41.    The facts set forth above establish probable cause to believe that

SMUKLER, BRADY, JONES, MOORE, and CAVANESS were involved in the commission of

several crimes, including conspiracy, false statements, producing false records, false campaign

contribution reports, and limits on campaign contributions and expenditures. Furthermore,

SMUKLER's email account, vlinkdata@aol.com (TARGET EMAIL #1), CAVANESS' email

account, cavasensellc@gmail.com (TARGET EMAIL #2), JONES' email account,

dajones25@yahoo.com (TARGET EMAIL #3), MOORE's email account,

jimmiemoore51@yahoo.com (TARGET EMAIL #4), and SMUKLER's email account,

ksblackblue@gmail.com (TARGET EMAIL #5) were used in order to facilitate the scheme by

communicating information necessary to facilitate the illegal campaign contribution from BOB

BRADY FOR CONGRESS and MOORE.

42.    Based on the evidence above and my training and experience, I have

probable cause to believe that evidence of SMUKLER, BRADY, CAVANESS, JONES, and

MOORE involvement in the above-described scheme, including emails and attachments to those

emails, is located in the specified email accounts that are the subject of this warrant. Based upon

the fact SMUKLER, BRADY, CAVANESS, JONES, and MOORE used email to relay

information about the opposition research and the agreement and invoices from the other

subjects of this investigation, it is likely SMUKLER, BRADY, CAVANESS, JONES, and

MOORE and the other subjects of this investigation communicated, and continue to

communicate, via email about the criminal acts and therefore additional relevant emails may

reside in SMUKLER, BRADY, CAVANESS, JONES, and MOORE's email accounts.

15

## CONCLUSION

43.     Based on the aforementioned information, your affiant respectfully submits that there is probable cause to believe that specified email accounts vlinkdata@aol.com (TARGET EMAIL #1), cavasensellc@gmail.com (TARGET EMAIL #2), dajones25@yahoo.com (TARGET EMAIL #3), jimmiemoore51@yahoo.com (TARGET EMAIL #4), and ksblackblue@gmail.com (TARGET EMAIL #5)  will contain evidence, as more fully described in Attachment A, regarding the above-described schemes and above-referenced crimes, including emails and electronic records and other evidence as specified in Attachment A relevant to the investigation and that the items contained in this account constitute evidence, fruits, and instrumentalities of the criminal violations noted above.

44.     Under 18 U.S.C. § 2703(g), a law enforcement officer does not have to be present for either the service or the execution of the warrant. It is sufficient for us to service it by fax, email or regular mail upon AOL, Inc.

45.     Under 18 U.S.C. §§ 2711(3) and 3127, this Court has the authority to issue the warrant directing AOL, Inc. to comply even though they are not located in this district, because the Court has jurisdiction over the offense being investigated.

46.     Under 18 U.S.C. § 2703(b)(1)(A), notice to the customer or subscriber is not required when the government obtains the contents of the electronic communications using a search warrant.

47.     Section 2705(b) provides that when the government is not required to notify the subscriber or customer that it is serving process on the provider, then the Court may order the provider not to give notice, provided one of the five risks set forth in § 2705(b) is present.

16

48.   AOL, Inc., Google, Inc., Yahoo! Mail, and Microsoft Corporation Online Services are providers of an electronic communication service, as defined in 18 U.S.C. § 2510(15), and/or a remote computer service, as defined in 18 U.S.C. § 2711(2). This Court has authority under 18 U.S.C. § 2705(b) to issue "an order commanding a provider of electronic communications service or remote computing service to whom a warrant, subpoena, or court order is directed, for such period as the court deems appropriate, not to notify any other person of the existence of the warrant, subpoena, or court order." *Id.*

49.   Accordingly, this Court should issue an order precluding AOL, Inc., Google, Inc., Yahoo! Mail, and Microsoft Corporation Online Services from giving notice to its subscribers. As noted above, because the government is using a search warrant, there is no duty to notify the customer. Sending a copy to AOL, Inc., Google, Inc., Yahoo! Mail, and Microsoft Corporation Online Services the place where the warrant is to be executed, is sufficient. Because this warrant relates to an ongoing criminal investigation that not public, all of the details of the investigation are not known to all subjects of the investigation. Accordingly, there is reason to believe that notification of the existence of this warrant will seriously jeopardize the investigation, including by giving the subjects an opportunity to destroy evidence, change patterns of behavior, and intimidate or influence potential witnesses, or each other. Some of the evidence in this investigation is stored electronically. If alerted to the existence of the warrant, the subjects under investigation could destroy that evidence, including information saved to their personal and work computers. *See* 18 U.S.C. § 2705(b). For the reasons listed above, the government has shown that there is reason to believe that notice by the provider would cause one of the enumerated harms. Thus, the government has satisfied all the conditions of § 2705(b).

17

50.    Therefore, I request that the Court issue an order under 18 U.S.C. §

2705(b), precluding AOL, Inc., Google, Inc., Yahoo! Mail, and Microsoft Corporation Online

Services from giving notice to their subscribers.  It is further respectfully requested this Court

issue an order sealing, until further order of this Court, all papers submitted in support of this

Application, including the Application, Affidavit, and Search Warrant, and the requisite

inventory.

Respectfully submitted,

Jonathan R. Szeliga
Special Agent

Subscribed and sworn before me

this _3/8t_ of May 2017

HON. RICHARD A. LLORET
United States Magistrate Judge

18

# ATTACHMENT A

Locations to be searched:

AOL accounts associated with:

vlinkdata@aol.com

Located on the e-mail servers, or other servers at AOL, Inc.
22000 AOL Way
Dulles, VA 20166
Or on servers at any other location owned or otherwise controlled by AOL, Inc.

Gmail accounts associated with:

cavasensellc@gmail.com

ksblackblue@gmail.com

Located on the e-mail servers, or other servers at Google, Inc.
1600 Amphitheatre Parkway
Mountain View, CA 94043
Or on servers at any other location owned or otherwise controlled by Google, Inc.

Yahoo! Mail accounts associated with:

dajones25@yahoo.com

Located on the e-mail servers, or other servers at Yahoo! Inc.
701 First Avenue
Sunnyvale, CA 94089
Or on servers at any other location owned or otherwise controlled by Yahoo! Inc.

Hotmail accounts associated with:

jimmiemoore51@hotmail.com

Located on the e-mail servers, or other servers at Microsoft Corporation Online
Services:
1065 La Avenida, SVC4/1120
Mountain View, CA 94043
Or on servers at any other location owned or otherwise controlled by Microsoft
Corporation Online Services.

## ATTACHMENT B

Particular Things to be Seized

## I.    Information to be disclosed by AOL, Inc., Google, Inc., Yahoo! Mail, and Microsoft Corporation Online Services.

To the extent that the information described above is within the possession, custody, or control of AOL, Inc. including any emails, records, files, logs, or information that have been deleted but are still available to AOL, Inc., Google, Inc., Yahoo! Mail, and Microsoft Corporation Online Services or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f) on January 12, 2017 and renewed on April 7, 2017, AOL, Inc., Google, Inc., Yahoo! Mail, and Microsoft Corporation Online Services are required to disclose the following information to the government for each account or identifier listed in herein:

a.    All records or other information regarding the identification of the email accounts, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative e-mail addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

b.    The types of service utilized;

c.    All records or other information stored at any time by an individual using the account, including emails, address books, contact and buddy lists, calendar data, pictures, and files;

d.    All records pertaining to communications between AOL, Inc., Google, Inc., Yahoo! Mail, and Microsoft Corporation Online Services and any person regarding the account, including contacts with support services and records of actions taken.

## II.    Items to be Seized from the locations identified.

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of 18 U.S.C. § 1343 (wire fraud), 18 U.S.C. § 371 (conspiracy), 18 U.S.C. § 1001 (false statements), 18 U.S.C. § 1519 (producing false records), 52 U.S.C. § 30104 (causing false campaign contribution reports), and 52 U.S.C. §§ 30910 and 30116 (limits on campaign contributions and expenditures) (collectively, the "SUBJECT OFFENSES") for the email accounts, including the following:

1.    For the time period of January 1, 2011 through the present, any and all documents and/or records related to Jimmie Moore, Carolyn C. Cavaness, JIMMIE MOORE FOR CONGRESS, CavaSense, Voterlink Data Systems, Kenneth Smukler, Donald Jones, and/or DA Jones and Associates.